MARKMAN, J.
The issue in this case is whether title owners of real property may be held liable for a public *4 nuisance that arose from that property, where someone other than the title owners is in possession of the property, is exercising control over the property, and is the one who created the alleged nuisance. We hold that title owners of the real property cannot be held liable for a public nuisance under such circumstances. Therefore, we reverse that portion of the Court of Appeals’ judgment that held to the contrary and reinstate the trial court’s order granting defendants’ motion for summary disposition.
I. PACTS AND HISTORY
In 2010, Terri Sholberg while driving her car hit a horse that was standing in the road and died as a result. Plaintiff, as personal representative of her estate, brought this action against Daniel Truman, the owner of the horse that had escaped from its stall on the farm,[1] and his brother and sister-in-law, Robert and Marilyn Truman (“defendants”), the title owners of the farm operated by Daniel Truman.[2] Other than being the title owners, defendants have nothing to do with the farm or with any of the animals on the farm, including the horse *5 struck by plaintiffs decedent. Plaintiff has presented evidence of at least 30 instances of animal elopement[3] near the farm between 2003 and 2010, each of which allegedly created a hazard on the surrounding public roads.3 [4] Marilyn Truman testified that no later than 2000, she received two or three telephone calls from people looking for Daniel Truman because his animals were loose.
A default judgment was entered against Daniel Truman. However, the trial court granted defendants’ motion for summary disposition, concluding that they could not be held liable for public nuisance because they were not in possession of the property. The Court of Appeals reversed with regards to the public nuisance claim,[5] 6holding that “the Trumans owned the Property from which the alleged nuisance arose, which is sufficient to bring a nuisance action against them.” Sholberg v Truman, unpublished opinion per curiam of the Court of Appeals, issued November 15, 2012 (Docket No. 307308). This Court then directed that oral argument be heard on defendants’ application for leave to appeal and directed the parties to address “whether, and under what circumstances, a property owner who is not in possession of the property and does not participate in the conduct creating an alleged nuisance may be liable for the alleged nuisance,” In re Sholberg Estate, 494 Mich 867 (2013), and argument was heard on December 12, 2013.
*6 II. STANDARD OF REVIEW
A trial court’s decision on a motion for summary disposition is reviewed de novo. Malpass v Dep’t of Treasury, 494 Mich 237, 245; 833 NW2d 272 (2013). The interpretation and applicability of a common-law doctrine is also a question that is reviewed de novo. People v Petty, 469 Mich 108, 113; 665 NW2d 443 (2003).
III. ANALYSIS
As an initial matter, the lower courts and the parties all assumed that incidents of animal elopement can constitute a public nuisance, and thus we too will assume, without deciding, that incidents of animal elopement can constitute a public nuisance.[6] “A public nuisance involves the unreasonable interference with a right common to all members of the general public.” Adkins v Thomas Solvent Co, 440 Mich 293, 304 n 8; 487 NW2d 715 (1992). “No better definition of a public nuisance has been suggested than that of an act or omission which obstructs or causes inconvenience or damage to the public in the exercise of rights common to all Her Majesty’s subjects.” Garfield Twp v Young, 348 Mich 337, 341-342; 82 NW2d 876 (1957) (quotation marks and citation omitted). “There is no doubt that nuisance is a tort....” Pohutski v City of Allen Park, 465 Mich 675, 685; 641 NW2d 219 (2002). “In general, even though a nuisance may exist, not all actors are liable for the damages stemming from the condition.” Cloverleaf Car Co v Phillips Petroleum Co, 213 Mich App 186, 191; *7 540 NW2d 297 (1995). “A defendant held liable for the nuisance must have possession or control of the land.” Wagner v Regency Inn Corp, 186 Mich App 158, 163; 463 NW2d 450 (1990); see also Stevens v Drekich, 178 Mich App 273, 278; 443 NW2d 401 (1989) (“It requires that the defendant liable for the nuisance have possession or control of the land.”); 19 Mich Civ Jur, Nuisances, § 1, p 63 (“Liability for nuisance... requires that the defendant hable for the nuisance have possession or control of the land on which the condition exists or the activity takes place.”).
As the Court of Appeals explained in Merritt v Nickelson, 80 Mich App 663, 666-667; 264 NW2d 89 (1978):
To argue, as plaintiff does, that a co-owner’s right to possession of the premises is sufficient to hold that co-owner liable for all injuries on the premises is to be simplistic. The issue of control is preeminent.
[The] rights and liabilities arising out of the condition of land, and activities conducted upon it, have been concerned chiefly with the possession of the land * * * for the obvious reason that the man in possession is in a position of control, and normally best able to prevent any harm to others. Prosser, Law of Torts (3d ed), § 57, at 358. (Footnote omitted.)
“Possession” differs from the “right to possession” and “ownership” because of the concept of control. Possession is the detention and control of anything which may be the subject of property, for one’s use and enjoyment. Blacks Law Dictionary (4th ed), at 1325. The mere “right to possession” does not necessarily entail the control inherent in the nature of “possession.”
It has been recognized in this state that control and possession are the determinative factors in the imposition of liability.
*8 It is a general proposition that liability for an injury due to defective premises ordinarily depends upon power to prevent the injury and therefore rests primarily upon him who has control and possession. [Citations omitted.]
This Court subsequently affirmed that decision, holding that a co-owner of land cannot be held liable where he or she has not “exercise[d] her right to possession and control over the property” because “[w]hen one co-owner of land cedes possession and control of the premises to her co-owners, the law is satisfied to look to those co-owners actually in control for liability for injuries to third persons.” Merritt v Nickelson, 407 Mich 544, 554; 287 NW2d 178 (1980).
Ownership alone is not dispositive. Possession and control are certainly incidents of title ownership, but these possessory rights can be “loaned” to another, thereby conferring the duty to make the premises safe while simultaneously absolving oneself of responsibility. [Id. at 552-553.]
See also Musser v Loon Lake Shores Ass’n, 384 Mich 616, 622; 186 NW2d 563 (1971) (“It is a general principle of tort law that a person is liable only as he participates in an activity giving rise to a tort. Mere co-ownership of land standing alone will not subject a person to liability for torts committed in the land by the other co-owners.”).[7]
In the landlord/tenant context (which bears considerable resemblance to the context we have here), this Court has made it clear that generally a landlord is not *9 liable for a nuisance created by the tenant. As Justice COOLEY explained in Samuelson v Cleveland Iron Mining Co, 49 Mich 164, 171; 13 NW 499 (1882):
It is not pretended that the mere ownership of real estate upon which there are dangers will render the owner liable to those who may receive injury in consequence. Some personal fault must be involved, or neglect of duty, before there can be a personal liability. As between landlord and tenant the party presumptively responsible for a nuisance upon the leased premises is the tenant. But this might be otherwise if the lease itself contemplated the continuance of the nuisance, for in that case the personal fault of the landlord would be plain[.] [Citations omitted.]
The question at issue in Samuelson was “whether a personal duty to guard against danger to the [iron] miners was still incumbent upon the defendant as owner of the mine, and was continuous while the mine was being worked by the contractors.” Id. at 173. This Court held:
Mere ownership of the mine can certainly impose no such duty. The owner may rent a mine, resigning all charge and control over it, and at the same time put off all responsibility for what may occur in it afterwards. If he transfers no nuisance with it, and provides for nothing by his lease which will expose others to danger, he will from that time have no more concern with the consequences to others than any third person. If instead of leasing he puts contractors in possession the result must be the same if there is nothing in the contract which is calculated to bring about danger. But if, on the other hand, he retains charge and control, and gives workmen a right to understand that he is caring for their safety and that they may rely upon him to guard against negligent conduct in the contractors and others, his moral accountability for their safety is as broad as it would be if he were working the mine in person; and his legal accountability ought to be commensurate with it.
*10 But we do not find that in this case there was any such retention of charge and control, or that the arrangement between the contractors and the mining company gave to workmen any assurance that the company would protect them against the negligence of the contractors and their servants. [Id. at 173-174.]
The general rule is that if “the acts of the tenant unauthorized by the landlord create a nuisance ‘after he has entered into occupation as a tenant, the landlord is not liable.’ ” Rosen v Mann, 219 Mich 687, 690-691; 189 NW 916 (1922) (citation omitted). “[I]n the absence of a contract duty on the part of the owner or landlord, the tenant, as between himself and the landlord, is bound to keep the leased premises in repair [and] the owner is not liable for damages to third persons for injuries arising from the neglect of the tenant to repair.” Maclam v Hallam, 165 Mich 686, 693; 131 NW 81 (1911); see also Harris v Cohen, 50 Mich 324, 325; 15 NW 493 (1883) (“The case was not allowed to go to the jury, on the ground that the defendant was not personally in possession, and that she was not liable, as the case stood, for the neglect of her tenant.”); Fisher v Thirkell, 21 Mich 1, 12-13 (1870) (“[T]he owners, being out of possession and not bound to repair, are not liable in this action for injuries received in consequence of the neglect to repair.”); Merritt, 80 Mich App at 667 (“[0]wners of land ... do not share liability when injury or negligence is attributable to the independent act of a single tenant who has exclusive control of the premises.”).
“The underlying reason for the general rule ... is that after leasing and surrendering the premises to the tenant the landlord loses all control over them.” Rosen, 219 Mich at 691. “It is a general proposition that liability for an injury due to defective premises ordinarily depends upon power to prevent the injury and *11 therefore rests primarily upon him who has control and possession.” Dombrowski v Gorecki, 291 Mich 678, 681; 289 NW 293 (1939).
A tenant or occupant of premises having the entire control thereof is, so far as third persons are concerned, the owner. He is, therefore, as already stated, usually deemed to be prima facie liable for all injuries to third persons occasioned by the condition of the demised premises. [Rosen, 219 Mich at 692 (quotation marks and citations omitted).]
Although this Court has consistently held that control is required in order to hold a defendant liable for a nuisance, in dicta the Court of Appeals has articulated this rule in such a way that suggests that ownership alone may be sufficient to impose liability even if someone other than the owner exercises control over the property. To wit, in Cloverleaf, 213 Mich App at 191, the Court of Appeals stated:
A defendant is liable for a nuisance where (1) the defendant created the nuisance, (2) the defendant owned or controlled the land from which the nuisance arose, or (3) the defendant employed another person to do work from which the defendant knew a nuisance would likely arise. [Emphasis added.]
The Court held that because the defendant did not own or control the property, the defendant could not be held liable. Cloverleaf cited Gelman Sciences, Inc v Dow Chemical Co, 202 Mich App 250, 252; 508 NW2d 142 (1993), for its articulation of the rule. Gelman did articulate this same rule, but held that because the defendant did not own or control the property, the defendant could not be held liable.
Gelman in turn cited Radloff v Michigan, 116 Mich App 745, 758; 323 NW2d 541 (1982), for its articulation of the rule. While Radloff did articulate this same rule, *12 it also held that “[ojwnership alone is not dispositive.” Id. at 755, quoting Merritt, 407 Mich at 552. Radloff concluded that because “the defendants both owned and controlled the property,” they could be held liable. Radloff, 116 Mich App at 759 (emphasis added). Radloff also held that Merritt was distinguishable because the defendants in Merritt were “mere landowners.” Id. at 756.
Radloff cited Stemen v Coffman, 92 Mich App 595, 597-598; 285 NW2d 305 (1979), for its articulation of the “owned or controlled” rule. Stemen did articulate this rule, but held that because the defendants did not own or control the property, they could not be held liable. In support of this proposition, Stemen, 92 Mich App at 598, cited 58 Am Jur 2d, Nuisances, § [95],[8] p 616, which provides:
To be liable for nuisance, it is not necessary for an individual to own the property on which the objectionable condition is maintained, but rather, liability for damages turns on whether the defendant controls the property, either through ownership or otherwise.[9] A person is liable *13 if he or she knowingly permits the creation or maintenance of a nuisance on premises of which he or she has control even though such person does not own the property or even though such person is not physically present, such as where he or she is an absentee owner. A party who has no control over the property at the time of the alleged nuisance cannot be held liable therefor.
While this language indicates that an absentee owner may be held liable, it does not state that mere land ownership may give rise to liability. That is, even the treatise cited above and referred to by Stemen indicates that something more than mere ownership is required — the absentee landowner must have “knowingly permit [ted] the creation or maintenance of a nuisance on [the] premises.” Id.[10]
*14 None of the Court of Appeals cases cited above involved a situation in which the Court of Appeals imposed liability on a defendant on the basis of his or her mere land ownership. Instead, each of these cases involved situations in which the Court of Appeals held that the defendants either could not be held liable because they did not own or control the property or could be held liable because they did both own and control the property. And even the treatise specifically relied on by the Court of Appeals for its “ownership or control” rule does not stand for the proposition that ownership alone can give rise to liability where someone other than the owner is exercising control over the property.
In the instant case, defendants merely own the property. It is undisputed that they have never possessed or exercised any control over the property. They have not even visited the property in more than a decade. They have no contact with the person who is in actual possession of the property and who is exercising control over that property. Defendants also had nothing to do with the horse that caused the accident in this case or with any other horse on the property. They did *15 not own, possess, or control the horse. Indeed, they did not even know that Daniel Truman owned the horse. Although Marilyn Truman testified that she received two or three telephone calls from people looking for Daniel Truman because his animals were loose, she testified that she received these calls no later than 2000 — at least 10 years before the accident. Not only did none of the neighbors testify that they had ever called defendants about the escaped animals, but most of these neighbors, as well as the animal-control officer, actually testified that they never called defendants about such animals. Thus, there is no evidence of any kind that defendants knew or had reason to know that Daniel Truman’s animals were escaping the property when the accident happened in 2010.[11] Because defendants did not control or possess the property or the horse, there is no basis on which to impose tort liability on defendants for a public nuisance.
*16 As explained by the trial court:
The facts in this case are that the property in question was under the possession and control of Daniel Truman. That while Robert and Marilyn Truman held fee title to that property, it was something more in the nature of a security interest than active ownership. There’s no evidence to show that they actively managed, supervised, maintained, possessed or controlled the subject property. To the contrary, all the evidence shows that possession and control of the premises was vested in Daniel Truman. The Plaintiff points to language in a mortgage on the subject premises that’s clearly regulating the relations as between the bank and Robert and Marilyn Truman. It doesn’t constitute any sort of admission by them that they were actually controlling the property as opposed to having the right to control it in relation to the bank, that right being something that they had passed along to Daniel Truman from the get go in this transaction it appears.
Robert and Marilyn were not in possession of the subject property. They didn’t control the subject property. Therefore, there’s no nuisance liability that can be attached to them with respect to this land, and the Court likewise must grant summary disposition .. . ,[12]
*17 “[T]he party presumptively responsible for a nuisance upon the leased premises is the tenant,” Samuelson, 49 Mich at 171, for the obvious reason that “the man in possession is in a position of control, and normally best able to prevent any harm to others,” Merritt, 407 Mich at 552 (quotation marks and citation omitted). In this case, Daniel Truman was the “man in possession” of the property, and thus he was the one “best able to prevent any harm to others.” Given that it appears that defendants “resign[ed] all charge and control over [the property],” Samuelson, 49 Mich at 173, to Daniel Truman, Daniel Truman, rather than defendants, is the one exclusively responsible for the alleged public nuisance he created on the property.[13]
IV CONCLUSION
For these reasons, we hold that title owners of real property cannot be held liable for a public nuisance that arose from that property, when someone other than the title owners is in actual possession of the property, is exercising control over the property, and is the one who created the alleged nuisance. Therefore, we reverse that portion of the Court of Appeals’ judgment that held to the contrary and reinstate the trial court’s order granting defendants’ motion for summary disposition.
Young, C.J., and Kelly, Zahra, and McCormack, JJ., concurred with MARKMAN, J.

 The horse had been stored in a three-walled enclosure with a heavy gate, but the gate had been secured with baling twine that had failed.

 Robert and Daniel Truman’s mother sold the property to Daniel Truman and his now ex-wife, Linda Truman. When Daniel and Linda divorced in 1989, the divorce decree required Daniel to pay off his wife’s interest in the property. In order to have the cash to do so, Daniel borrowed money from his brother, Robert. Presumably because of the financial assistance that defendants provided Daniel, Linda signed the deed to the property over to defendants. Daniel repaid about $6,000 of the $15,000 that he owes defendants, but has not made a payment to defendants in several years, although Daniel does pay the property taxes. Defendants had a land contract drawn up but never obtained Daniel’s signature on it. Defendants and Daniel do not speak with one another and have not done so for the past 10 years. Defendants have also not been on the property in the past 10 years.

 “Elope” in this legal context means “to flee; escape.” Random House Webster’s College Dictionary (1992).

 It is unknown whether all of these elopements involved animals from the property at issue here.

 Plaintiff also claimed negligence and violations of the Equine Activity Liability Act, hut the trial court subsequently dismissed those claims and the Court of Appeals affirmed. Plaintiff filed an application for leave to appeal which this Court denied, and thus those claims are not before this Court.

 Because defendants failed to raise this issue at the trial court, this issue is not properly before this Court. See Walters v Nadell, 481 Mich 377, 387; 751 NW2d 431 (2008) (“[A] litigant must preserve an issue for appellate review by raising it in the trial court... . [Generally ‘a failure to timely raise an issue waives review of that issue on appeal.’ ”) (citation omitted).

 Although Merritt and Musser involved premises liability causes of action, the general principles of tort liability articulated in those opinions are just as relevant in the context of a nuisance cause of action. Tort law generally does not favor shifting liability from a party directly responsible for giving rise to the tort to a mere title holder who lacked actual possession and control of the land.

 Stemen actually cited § 49, but this language can only be found in § 95, pp 642-643.

 See also Beard v Michigan, 106 Mich App 121, 126; 308 NW2d 185 (1981), citing Stemen, 92 Mich App at 598 (“We have previously held that liability for damage caused by a nuisance turns upon when the defendant was in control, either through ownership or otherwise.”); Detroit Bd of Ed v Celotex Corp, 196 Mich App 694, 709-710; 493 NW2d 513 (1992), citing Radloff, 116 Mich App at 758 (“[Nluisance liability may be imposed where ... the defendant owned or controlled the property from which the nuisance arose ... .”); Mitchell v Dep’t of Corrections, 113 Mich App 739, 742; 318 NW2d 507 (1982), citing Stemen, 92 Mich App at 598 (“Unless the defendant has created the nuisance, owned or controlled the property from which it arose or employed another to do work knowing it would likely create a nuisance, liability may not be imposed under a nuisance theory.”); Coburn v Pub Serv Comm, 104 Mich App 322, 327; 304 NW2d 570 (1981), quoting Stemen, 92 Mich App at 598 (“We have found no authority imposing liability for damage caused by a nuisance where the *13 defendant has not either created the nuisance, owned or controlled the property from which the nuisance arose, or employed another to do work which he knows is likely to create a nuisance.”).

 As recognized by the partial dissent, “this Court has never explicitly held that knowledge is a required element of a nuisance claim,” post at 23, and we do not hold so in the instant case. See note 11 of this opinion. Such a holding would require us to modify our existing common law, and “[w]hile this Court unquestionably has the authority to modify the common law, such modifications should be made with the utmost caution because it is difficult for the judiciary to assess the competing interests that may be at stake and the societal trade-offs relevant to one modification of the common law versus another in relation to the existing rule.” Woodman v Kera LLC, 486 Mich 228, 231; 785 NW2d 1 (2010). Contrary to the partial dissent’s contention, just because the parties and the Court assumed, without deciding, that knowledge is an element of a nuisance claim in Wendt v Village of Richmond, 164 Mich 173; 129 NW 38 (1910), does not mean that if this Court today expressly held that knowledge is an element of a nuisance claim this would not constitute a modification of our existing common law. Moreover, given that the parties themselves have not even asked that the common law he modified by adding the element of knowledge (indeed, defendants have actually argued that “knowledge of a nuisance is irrelevant for purposes of liability”), we are not prepared to “assess the competing interests that may be at stake and the societal trade-offs relevant” to such a modification of the common law. Woodman, 486 Mich at 231. We recognize that plaintiff and defen *14 dants (at least until they filed their application for leave to appeal with this Court) assumed that knowledge is an element of a nuisance claim. However, this does not change the fact that neither party has argued that we should modify the common law to add a knowledge requirement or has “assess[ed] the competing interests that may be at stake and the societal trade-offs relevant to [such a] modification of the common law.” Woodman, 486 Mich at 231. One would think that if it were so important for this Court to add knowledge as an element, defendants, who have the most to gain by the addition of this element, would have argued in support of this addition. But, instead, defendants argued that “knowledge of a nuisance is irrelevant for purposes of liability.” In light of these circumstances, we exercise “the utmost caution” in recognition of the fact that we are in no position to “assess the competing interests that may be at stake and the societal trade-offs relevant to [the partial dissent’s proposed] modification of the common law.” Id.

 We speak of knowledge not because it is an element of a nuisance action in this state, because it is not, see note 10 of this opinion, but only because defendants’ lack of knowledge is relevant evidence in this case of defendants’ lack of control or possession of the property, which is an element of a nuisance action. See Wagner, 186 Mich App at 163 (“A defendant held liable for the nuisance must have possession or control of the land.”). That is, the fact that defendants did not even know that Daniel Truman owned a horse, or that animals were still getting loose from the farm operated by Daniel Truman, suggests strongly that they were also not in possession of, or exercising control, over the farm because had they been, they likely would have known about the horse and they likely would have known that animals were still escaping from the farm. See MRE 401 (“ ‘Relevant evidence’ means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.”). It should not be viewed as remarkable that a lack of knowledge of some occurrence may be relevant evidence of a lack of control with regard to the conditions that underlie that occurrence. This, of course, is not to say that evidence of knowledge or the lack thereof is dispositive evidence of control or the lack thereof.

 Unlike the partial dissent, we do not believe that there is a genuine issue of material fact in this case concerning the issue of control. Although the facts cited by the partial dissent — that defendants are the title owners of the property, that they loaned money to Daniel Truman so that he could buy out his ex-wife’s interest in the property, that they maintained insurance on the property, and that they took out a mortgage on the property that included a duty to maintain the property — suggest strongly that defendants may have had a right to exercise control of the property, they do not suggest that defendants actually exercised control over the property, which remains the dispositive issue. See Merritt, 407 Mich at 554 (stating that a co-owner of land cannot he held hable when he or she has not “exercise[d] her right to possession and control over the property” because “when one co-owner of land cedes possession and control of the premises to her co-owners, the law is satisfied to look to those co-owners actually in control for liability for injuries to third persons”).

 Because in this case someone other than defendant title owners was in possession of and exercising control over the property, it is unnecessary to address whether an absentee landowner could be held liable for a nuisance where no one is in possession of or exercising control over property. We simply hold that when someone other than the landowner is in possession of property, is exercising control over the property, and is the one who created the nuisance, that person, rather than the landowner, is the one liable for the public nuisance.