# STATE OF MICHIGAN

# COURT OF APPEALS

STEVEN THOMPSON,

        Plaintiff-Appellant,

v

ANN GIBSON,

        Defendant-Appellee.

UNPUBLISHED
August 8, 2017

No. 333755
Livingston Circuit Court
LC No. 15-028662-NO

Before: CAVANAGH, P.J., and METER and M. J. KELLY, JJ.

PER CURIAM.

Plaintiff, Steven Thompson, appeals by right the trial court's order granting summary disposition under MCR 2.116(C)(10) in favor of defendant, Ann Gibson. We affirm the court's grant of summary disposition on Thompson's nuisance claim, but because there is a genuine issue of material fact on Thompson's premises liability claim, we reverse and remand for further proceedings with regard to that claim.

## I. BASIC FACTS

Thompson was injured while sweeping the back deck of a house in Howell, Michigan, that he was renting from Gibson. The accident occurred on July 8, 2014. Thompson explained:

> [W]hen I got to the railing that surrounds the deck I pushed as much of the swept up debris underneath the railing. I put my left hand on the top part of the railing, leaned over to brush off the edge of the debris I had swept under, and the rail just very freely gave. To prevent myself from falling while balancing—I was a hairline from going over. I was—I thought I was going for sure. And I had a broom out in my right hand and I'm about to take this six foot section of rail over. So I start to try and correct myself back into the original position, struggling. And by the time I did get it back into the original position I heard something kind of pop or rip in my arm and immediate pain.

After the accident, Thompson went to the hospital and was diagnosed with a detached triceps tendon and had to undergo surgery.

-1-

Thompson explained that the only entry into the house's fenced backyard was via the deck. Both Thompson and his wife testified that they would use the deck for ingress and egress to the backyard. Further, Thompson's wife stated that when she used the deck to walk into the backyard she could not see the railing in her peripheral vision. She also explained that although there was a table on the deck, she only sat by it about three or four times, and it was not in the "isolated" corner where the accident occurred. She asserted that nobody spent time "back there." For his part, Thompson testified that he sat on the deck, but that he would not say he did so a lot. Thompson and his wife denied knowing about the defect before the accident or providing notice to Gibson that the railing was defective. Thomson also explained that before the accident he never thought the railing was dangerous because he thought it was securely affixed.

Thompson filed suit against Gibson on August 4, 2015, alleging one count of negligence and one count of nuisance. He asserted that Gibson was negligent by failing to maintain the premises in a reasonably safe condition, by failing to adequately inspect the premises for hazards, by violating MCL 125.401 by failing to keep the premises and all its parts in good repair, and by failing to warn him about the improperly secured railing. He also asserted that Gibson's operation and maintenance of the premises "constituted a nuisance" because it contained an improperly secured hand rail that posed a hazard of extensive injury to Thompson and others.

On March 8, 2016, Gibson filed a motion for summary disposition under MCR 2.116(C)(8) and (C)(10). She argued that she was entitled to summary disposition on the negligence claim because she lacked knowledge of any existing defects and because the danger was open and obvious. Further, she asserted that she was entitled to summary disposition on the nuisance claim because she did not have control of the property. The trial court agreed and granted summary disposition in her favor.

## II. SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

Thompson argues that the trial court erred in granting summary disposition of his claims for negligence and nuisance. We review de novo challenges to a trial court's decision on summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). In reviewing a motion for summary disposition under MCR 2.116(C)(10), a court considers "affidavits, pleadings, depositions, admissions, and other documentary evidence submitted by the parties in the light most favorable to the party opposing the motion." *Greene v A P Prods, Ltd*, 475 Mich 502, 507; 717 NW2d 855 (2006) (citations and quotation marks omitted). A motion under MCR 2.116(C)(10) "tests the factual support for a claim and should be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *MEEMIC Ins Co v DTE Energy Co*, 292 Mich App 278, 280; 807 NW2d 407 (2011). A genuine issue of material fact exists if the record, viewed in a light most favorable to the nonmoving party, establishes a matter in which reasonable minds could differ. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d

8 (2008). Further, the court "may not resolve factual disputes or determine credibility in a ruling on a summary disposition motion." *Burkhardt v Bailey*, 260 Mich App 636, 646-647; 680 NW2d 453 (2004).[1]

## B. ANALYSIS

"In a premises liability action, a plaintiff must prove the elements of negligence: (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, (3) the breach was the proximate cause of the plaintiff's injury, and (4) the plaintiff suffered damages." *Benton v Dart Props, Inc*, 270 Mich App 437, 440; 715 NW2d 335 (2006). A landowner's duty with respect to the conditions of the premises depends on the status of the person entering the land, i.e., whether the individual is an invitee, licensee, or trespasser. *James v Alberts*, 464 Mich 12, 19; 626 NW2d 158 (2001). It is undisputed that Thompson was an invitee, which means that he was entitled to the highest level of protection under the law. See *Id*. at 19-20.

A landowner has a duty of care to warn his or her invitees of any known dangers and to make the premises safe. *Id*. In order to make the premises safe, the landowner must inspect the premises and, depending upon the circumstances, make any necessary repairs or warn of any discovered hazards. *Id*. at 20. "The duty to inspect one's premises to ensure that the premises are safe for invitees is inextricably linked to the concept of constructive notice." *Grandberry-Lovette v Garascia*, 303 Mich App 566, 573; 844 NW2d 178 (2014), abrogated on other grounds *Lowrey v LMPS &LMPJ, Inc*, 500 Mich 1, 10 n 1; 890 NW2d 344 (2016). Even in the absence

---

[1] In this case, the trial judge, a district court judge sitting by assignment on the circuit court, improperly made a credibility determination against Thompson. The judge recounted that on July 2, 2014, she was told by Thompson's lawyer that Thompson was "going on vacation" until July 9, 2014 and "couldn't be here on the 7th," so she adjourned the eviction hearing to July 21, 2014. Although the eviction proceeding was unrelated to the instant case, the trial judge began the oral argument on the motion for summary disposition by stating that she had questions about Thompson's credibility given that he had "lied to [her]" during the district court proceedings. She stated:

> The hearing was on 7/7. The accident that's alleged to have happened [took place] on 7/8. Well, they weren't on vacation. But one way or the other, they were asking for an adjournment, claiming that they were on vacation. We took them at their word and we granted it. Well, vacation and the inability to be here would pre-suppose that they had to go somewhere, that they couldn't be here on the 7th. So they lied.

The judge added that she felt Thompson was "just trying to avoid being evicted." Although, on reconsideration, the judge stated that she did not make a credibility determination against Thompson, we find that unlikely given her earlier statements. On remand, the trial judge shall refrain from making any credibility determinations when ruling on a summary disposition motion.

of actual knowledge of a dangerous condition, "Michigan courts have long recognized that the law will impute knowledge of the dangerous condition" to the landowner if he or she "should have discovered the dangerous condition in the exercise of reasonable care." *Id*. Therefore, "[w]hen a premises possessor fails to inspect his or her property, or conducts an inadequate inspection, the law will impute knowledge of the dangerous condition to the premises possessor if the dangerous condition is of such a character or has existed for a sufficient time that a reasonable premises possessor would have discovered it." *Id*. at 575. Constructive notice can arise from both the passage of time, from the type of condition involved, or from a combination of both. See *Kroll v Katz*, 374 Mich 364, 371-373; 132 NW2d 27 (1965).

A premises possessor's duty to inspect is not limited to a casual inspection. *Grandberry-Lovette*, 303 Mich App at 557.[2]

> As our Supreme Court has explained, a premises possessor has a duty "to be reasonably sure" that he or she "is not inviting" his or her invitees "into danger, and to that end he [or she] must exercise ordinary care and prudence to render the premises reasonably safe for the visit." *Torma v Montgomery Ward & Co*, 336 Mich 468, 476-477; 58 NW2d 149 (1953) (quotation marks and citations omitted). A premises possessor must take "reasonable care to know the actual conditions of the premises. . . ." *Kroll v Katz*, 374 Mich 364, 373; 132 NW2d 27 (1965) (quotation marks and citation omitted); see also *Conerly v Liptzen*, 41 Mich App 238, 241; 199 NW2d 833 (1972) (stating that a premises possessor has a duty to "inspect the premises to discover possible dangerous conditions of which he does not know") (quotation marks and citation omitted). The duty to take reasonable care to know the actual condition of the premises requires the premises possessor to undertake the type of inspection that a "reasonably prudent" premises possessor would exercise under similar circumstances to protect his or her invitees. See *Keech v Clements*, 303 Mich 69, 73; 5 NW2d 570 (1942); *Oppenheim v Pitcairn*, 293 Mich 475, 477-478; 292 NW 374 (1940) (stating that negligence may arise from the premises possessor's "faulty supervision over the premises" such as where a dangerous condition existed for sufficient time "that knowledge of the menace should have come to the reasonably prudent incumbent"); *Hall v Murdock*, 119 Mich 389, 394; 78 NW 329 (1899) (stating

---

[2] We note that it has long been held that a premises possessor owes no duty under the open and obvious doctrine if the unsafe condition can be observed by an average user with ordinary intelligence upon casual inspection. *Novotney v Burger King Corp (On Remand)*, 198 Mich App 470, 474-475; 499 NW2d 379 (1993). However, the duty imposed on invitees to casually observe open and obvious dangers is a duty that applies to *invitees* (or licenses or trespassers) with regard to whether liability is cut off under the open and obvious doctrine. It is not a duty imposed on a premises possessor in relation to his or her duty to inspect his or her property for dangerous conditions. Rather, a premises possessor's duty to inspect may, at times be satisfied by a casual inspection, but at other times it may require a more thorough inspection. The type of inspection required is generally a jury question. See generally *Kroll*, 374 Mich at 371-373.

that the trial court erred by instructing the jury that the owner had a duty to test the strength of the elevator's cable from "time to time"—as opposed to "inspection and examination"—because there was no evidence that "such or any other kinds of tests of the strength of elevator cables are common"); see also 2 Restatement Torts, 2d, § 343, comment *e*, p 217 (noting that the extent of preparation that the premises possessor must make depends on the nature of the land and the purposes for which it is used). Moreover, whether the premises possessor should have discovered the dangerous condition with a proper inspection will often be a question of fact for the jury. *Kroll*, 374 Mich at 371-372; *Torma*, 336 Mich at 477; see also *Moning v Alfono*, 400 Mich 425, 438; 254 NW2d 759 (1977) (stating that whether a defendant's conduct in the particular case fell below the general standard of care will generally be a question of fact for the jury). Consequently, for purposes of summary disposition, a premises possessor cannot invariably establish that he or she did not have constructive notice of a dangerous condition by showing that the dangerous condition would not have been discovered during a casual inspection . . . . *Kroll*, 374 Mich at 373 (stating that there is no liability for a dangerous condition about which a premises possessor did not know "and could not have discovered with reasonable care") (quotation marks and citation omitted). Accordingly, if under the totality of the circumstances a reasonably prudent premises possessor would have employed a more vigorous inspection regime that would have revealed the dangerous condition, the fact that the condition was not observable on casual inspection would not preclude a jury from finding that the premises possessor should have discovered the hazard in the exercise of reasonable care notwithstanding its latent character. [*Id.* at 577-579 (footnotes omitted).]

Based on the documentary evidence submitted on summary disposition, it is unrefuted that before Thompson's accident, Gibson did not actually know that there was a defect with the railing on the deck, nor was she notified about a defect by the prior tenants or by Thompson and his wife. Gibson stated that from 2005 until 2012, she used the deck on a regular basis to entertain guests and for ingress and egress from the back yard, and her husband and a friend both provided affidavits indicating that they had also used the deck and did not see any problems with it. Based on this evidence, it is apparent that, at best, Gibson only conducted a casual inspection of the deck before renting it to the Thompsons.

A landowner, however, "cannot avoid liability for the harms caused by a dangerous condition on his or her property by claiming ignorance of its existence if in the exercise of reasonable care the premises possessor should have discovered it." *Id.* at 575. And "whether the premises possessor should have discovered the dangerous condition with a proper inspection will often be a question of fact for the jury." *Id.* at 579. Here, with regard to the condition of the deck, both Gibson and Thompson presented testimony that it had deteriorated over time.[3]

---

[3] There are no allegations or facts suggesting that the unsafe condition was caused by either the parties or an unnamed third party. Thus, viewed in the light most favorable to Thompson, it is reasonable to conclude that the condition developed naturally over time.

Gibson explained that she lived in the house from 2005 until 2012, when she relocated to Tennessee for work. She stated that the deck where Thompson was injured was the same deck that came with the house when she purchased it in 2005. While she lived there, she had to replace a decorative spindle in another area of the deck. But she did not have to conduct any other repairs, besides the replacement of a warped board that was "remote" from the spot where Thompson was injured. In an affidavit,[4] Thompson stated that the railing, which was made of wood, was completely detached from the post, had no visible nails, and had a hole where it appeared a nail had once been.[5]

Thus, viewing the evidence in the light most favorable to Thompson, it is reasonable to infer that the railing had deteriorated over time as evidenced by the missing nail and the lack of maintenance between 2005 and 2014. Further, the unsafe condition at issue was a structural defect with a safety feature of the home. It was not a transient hazard, such as a snow, ice, or debris that could accumulate on a surface within a short period of time. Accordingly, on the record before us, it is reasonable to conclude that the unsafe condition developed over time and was of such a character that, with the exercise of reasonable care, Gibson should have known about it. Because there was a genuine issue of material fact regarding whether Gibson should have had notice of the unsafe condition, the trial court erred in granting summary disposition on Thompson's negligence claim.[6]

The trial court did not, however, err in granting summary disposition on Thompson's nuisance claim. In her motion, Gibson asserted that summary disposition was appropriate because she lacked control of the property and because Thompson had a responsibility to keep

---

[4] On appeal, Gibson argues that this Court cannot consider Thompson's affidavit because it is not signed, dated, or notarized. While it is true that the affidavit attached to Thompson's *brief on appeal*, is deficient, the copy of the affidavit attached to Thompson's response to the motion for summary disposition *is* signed, dated, and notarized. Therefore, we can and must consider the affidavit. However, contrary to Thompson's assertions on appeal, the affidavit in the lower court record does not contain any reference to the nails in the railing rusting away. That portion of the affidavit was crossed out and replaced with a handwritten sentence stating that "There was a hole in the wood where it appeared a nail once was." Because we are bound to evaluate the facts as they were presented to the lower court, we will consider Thompson's affidavit as it was presented to the lower court and will not consider the version attached to Thompson's brief on appeal.

[5] Thompson testified that the railing "gave very freely" when he leaned against it. He also stated that he did not realize the railing was unanchored and that it "moved instantly." Photographs attached to Gibson's motion for summary disposition further show that the railing was unattached; two photographs show a slanted gap between where the railing and the post meet and another two photographs show the railing pushed completely off the post, leaving what appears to be a large scrape in the paint on the post.

[6] The trial court found that the condition was not open and obvious. That decision has not been challenged on appeal, so we will not address it further.

the property in good repair. In support, she relied on our Supreme Court's decision in *Sholberg v Truman*, 496 Mich 1; 852 NW2d 89 (2014). In *Sholberg*, our Supreme Court held that mere ownership of property, in the absence of possession or control of the property, was insufficient to maintain a claim of nuisance against a lessor. *Id*. at 7, 17. Here, Gibson presented evidence that she lacked possession or control over the premises on the date of the accident, and Thompson offered no evidence in rebuttal. Therefore, because Gibson neither controlled nor possessed the property at the time of the accident, there is no basis on which to impose tort liability on her for a nuisance. See *id*. at 15.

Affirmed in part and reversed in part and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Neither party having prevailed in full, we award no taxable costs under MCR 7.219(A).

/s/ Mark J. Cavanagh
/s/ Patrick M. Meter
/s/ Michael J. Kelly