# Order

Michigan Supreme Court
Lansing, Michigan

March 8, 2019

158361

STEVEN THOMPSON,
        Plaintiff-Appellee,

v

ANN GIBSON,
        Defendant-Appellant.

SC: 158361
COA: 333755
Livingston CC: 15-028662-NO

_____/

Bridget M. McCormack,
Chief Justice

David F. Viviano,
Chief Justice Pro Tem

Stephen J. Markman
Brian K. Zahra
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh,
Justices

On order of the Court, the application for leave to appeal the July 24, 2018 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the question presented should be reviewed by this Court.

MARKMAN, J. (*dissenting*).

I respectfully dissent from this Court's order denying leave to appeal. In my judgment, the Court of Appeals' decision represents a fundamental misunderstanding of the common law of this state with regard to the duty imposed on landlords. More specifically, the panel's analytical errors improperly render landlords liable for defects in leased premises that arise *after the tenants have taken possession of the premises*. The duty to discover such defects rests primarily on the premises possessor, i.e., the tenant, rather than the landlord, as the tenant is better situated to discover such defects than the landlord is. Because I believe that the Court of Appeals improperly shifted the duty to discover defects that arise during the tenant's possession of the premises from the tenant to the landlord, I would reverse.

In this case, plaintiff, Steven Thompson, signed a one-year lease to reside in a home owned by defendant, Ann Gibson. Approximately 10 months after signing the lease, plaintiff was injured while sweeping debris off the back deck of the home, which was within the leased premises. Plaintiff placed his left hand on the rail to sweep the debris off the edge and the rail "freely gave way." In an affidavit, plaintiff averred that the rail was completely detached from the post, had no visible nails, and had a hole where it appeared a nail had once been. Plaintiff did not notice the defect in the rail before the injury occurred, and neither plaintiff nor the previous tenant notified defendant about a problem with the rail. Plaintiff sued for nuisance and also brought a negligence claim under a premises-liability theory. The trial court granted defendant's motion for summary disposition on both counts, but the Court of Appeals reversed with respect to the negligence claim. *Thompson v Gibson*, unpublished per curiam opinion of the Court

of Appeals, issued August 8, 2017 (Docket No. 333755) (*Thompson I*). This Court vacated the part of the Court of Appeals judgment addressing premises liability and remanded to that court to address this Court's decision in *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1 (2016). *Thompson v Gibson*, 501 Mich 1087 (2018). On remand, the Court of Appeals once again reversed the trial court, concluding that genuine issues of material fact precluded summary disposition of plaintiff's negligence claim. *Thompson v Gibson (On Remand)*, unpublished per curiam opinion of the Court of Appeals, issued July 24, 2018 (Docket No. 333755) (*Thompson II*).

The issue is whether plaintiff has raised a genuine issue of material fact that defendant (the landlord) possessed constructive notice of the defect that injured plaintiff during his lease of the property. As this Court recently explained:

> A premises owner breaches its duty of care when it "knows or should know of a dangerous condition on the premises of which the invitee is unaware and fails to fix the defect, guard against the defect, or warn the invitee of the defect." [*Lowrey*, 500 Mich at 8, quoting *Hoffner v Lanctoe*, 492 Mich 450, 460 (2012).]

Accordingly, to establish a negligence claim based on premises liability, a plaintiff must show that the premises owner had "actual or constructive notice of the dangerous condition." *Id*. at 10. Because it is undisputed here that defendant did not possess actual notice of the defect, the determinative question is whether there is a genuine issue of material fact that defendant possessed constructive notice, i.e., whether "the hazard was of such a character, or had existed for a sufficient time, that a reasonable premises possessor would have discovered it." *Id*. at 11-12.

The Court of Appeals noted that a landowner possesses a duty to " 'inspect the premises and, depending upon the circumstances, make any necessary repairs or warn of any discovered hazards,' " *Thompson II*, unpub op at 4 n 3, quoting *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 597 (2000), and then held that a reasonable jury could conclude that defendant should have discovered the defect in the rail upon reasonable inspection, *id*. at 5-7. If the injury in this case had occurred in a retail commercial context, I might well agree with that conclusion. However, the Court of Appeals seemingly failed to recognize the significance of the *lease* of the property to the constructive-notice inquiry.[1] " 'Premises liability is conditioned upon the presence of

---

[1] This failure may have been caused, in part, by the Court of Appeals' published decision in *Grandberry-Lovette v Garascia*, 303 Mich App 566 (2014), overruled in part on other grounds by *Lowrey*, 500 Mich at 10 n 1, a decision the Court of Appeals in the instant case cited in its opinion. In *Grandberry-Lovette*, the defendant leased his home through a county-operated program to several persons with disabilities. *Id*. at 570. The plaintiff, who worked as a healthcare aide to assist the residents, was injured when she fell after a

both possession and control over the land.' " *Orel v Uni-Rak Sales Co, Inc*, 454 Mich 564, 566 (1997) (citation and emphasis omitted); see also *Bailey v Schaaf*, 494 Mich 595, 608 (2013) (stating that "the element of control forms the basis of imposing a duty to invitees"). In the context of a landlord's duty to his or her tenants, we explained more than 50 years ago:

> The element of control is of prime importance. The common-law duty is predicated upon the concept that a lease is equivalent to a sale. The lessor, absent agreement to the contrary, surrenders possession and holds only a reversionary interest. Under such circumstances, he is under no obligation to look after or keep in repair premises over which he has no control.
>
> An exception to the general lack of obligation is that a landlord has a duty to keep in safe condition any portion of a building under his control. The duty extends to a tenant's invitees. [*Lipsitz v Schechter*, 377 Mich 685, 687-688 (1966) (citations omitted), superseded in part by MCL 554.139(1)(b).]

Subsequent cases have reaffirmed this principle, holding that "[t]he landlord is not liable for injuries that occur within the boundaries of the leased premises," *Williams v Cunningham Drug Stores, Inc*, 429 Mich 495, 499 n 10 (1988), and that

> a landlord's duty does not extend to the areas within a tenant's leasehold, because the landlord has relinquished its control over that area to the tenant. This relinquishment of control extinguishes the landlord's duty of reasonable care over those areas. [*Bailey*, 494 Mich at 609 n 36 (citations omitted).]

This is because " 'after leasing and surrendering the premises to the tenant the landlord loses all control over them,' " and " 'liability for an injury due to defective premises ordinarily depends upon power to prevent the injury and therefore rests primarily upon him who has control and possession.' " *Sholberg v Truman*, 496 Mich 1, 10-11 (2014)

---

step on the stairs leading to the porch broke. *Id*. at 570-571. In analyzing whether the landlord had constructive notice of the defect on the stairs, the Court of Appeals noted a premises possessor's duty to inspect the premises without considering the possibility that the landlord no longer had a duty to inspect in light of the lease of the property. See *id*. at 573-580. To the extent that the panel here followed the lead of *Grandberry-Lovette* when it failed to recognize the significance of the lease to the constructive-notice inquiry, this is a consequential error and one that is likely to redefine the common law in the realm of landlord tort liability.

(citations omitted). Accordingly, defendant's common-law duty to inspect the premises ended when plaintiff signed the lease.[2]

It appears that this Court has not expressly addressed the inference arising from the leasing of premises concerning whether a landowner possesses constructive notice of a defect. Nevertheless, the implication seems fairly straightforward to me: because a landlord has no duty to inspect when the premises are being leased, the landlord necessarily possesses constructive notice of a defect within the leased premises only if he or she should have known of the defect *before* leasing the property.[3] If, however, the defect only arose (or became readily apparent) *after* leasing the property, the landlord would not have reason to know of the defect unless by some other means specifically informed of it. To hold otherwise would effectively shift responsibility from those in possession and control of the property (the tenants) to those who no longer have such possession and control, in contradiction of well-established common-law principles. By entering into a leasing agreement, plaintiff accepted primary responsibility for the condition of the property during the term of the lease, which includes the duty to discover and to report to the landlord defects arising during the term of that lease. See *Sholberg*, 496 Mich at 10-11.

As relevant to this case, the nature of the defect—an "unanchored or loosely anchored safety railing on a back deck that 'gave freely' and [did so] almost instantly the second [plaintiff] leaned against it," *Thompson II*, unpub op at 5—certainly suggests that the defect had existed for some time before the injury occurred. However, there is no

---

[2] As recognized by the Court of Appeals in *Woodbury v Bruckner (On Remand)*, 248 Mich App 684, 696-697 (2001), this Court overruled part of *Lipsitz*'s reasoning in *Mobil Oil Corp v Thorn*, 401 Mich 306, 311-313 (1977), in which we held, relying on § 357 of the Second Restatement of Torts, that a lessor can be held liable in tort for a failure to repair leased premises during the term of the lease in accordance with the statutory covenant of reasonable repair in MCL 554.139(1)(b). However, MCL 554.139(1)(b) does not require the landlord to inspect the premises, see *Raatikka v Jones*, 81 Mich App 428 (1978), and therefore one is only liable in tort under MCL 554.139(1)(b) "if he does not exercise reasonable care *after he has had notice* of the need of repairs," 2 Restatement Torts, 2d, § 357, comment *d*, pp 242-243 (emphasis added). Thus, *Lipsitz*, along with *Williams* and *Bailey*, continue to support the proposition that a landowner's duty to *inspect the premises* must generally end upon the leasing of property to another.

[3] Of course, a lessor would also be liable under *Mobil Oil Corp* if the tenant had informed the lessor of the defect or the lessor *voluntarily* inspected the premises and discovered the existence of a defect, yet failed to repair that defect. However, plaintiff here did not know of the existence of the defect before the injury occurred, let alone inform the landlord of the defect. Moreover, it is undisputed that defendant did not have actual knowledge of the defect before the injury occurred.

evidence that the defect existed—let alone would have been apparent upon reasonable inspection—*at the time the lease was signed*.  The defect could have arisen one week earlier, three months earlier, or five years earlier; the jury could only speculate that it had (or had not) arisen and was (or was not) readily apparent *ten months* before the injury occurred.  While the party opposing a motion for summary disposition is entitled to all reasonable inferences that arise from the evidence, it may not defeat such a motion with mere speculation.  *Bernardoni v City of Saginaw*, 499 Mich 470, 475 (2016).  Accordingly, I would conclude that plaintiff, upon whom the burden of proof clearly rests, has failed to sufficiently demonstrate that there is a genuine issue of material fact that defendant was on constructive notice of the defect that caused plaintiff's injuries.

## CONSEQUENCES

The common law reflects the practices and common sense of society.  See, e.g., *Gildersleeve v Hammond*, 109 Mich 431, 438 (1896) (explaining that "sound reason, common sense, and common honesty . . . are the foundation of the common law").  Moreover, individual responsibility for one's own safety remains a core tenet of the common law.  See *Hoffner*, 492 Mich at 460 (recognizing that under the common law one has an "obligation to assume personal responsibility to protect [oneself] from apparent dangers"); *Bertrand v Alan Ford, Inc*, 449 Mich 606, 616-617 (1995) (recognizing "the overriding public policy of encouraging people to take reasonable care for their own safety").  The common-law rule that premises liability is " 'conditioned upon the presence of both possession and control over the land,' " *Orel*, 454 Mich at 568 (citation and emphasis omitted), is altogether consistent with these principles of common sense and personal responsibility for at least two reasons.  First, tenants who possess and control property will almost certainly be better situated to discover defects that *arise during their tenancy* than the landlord.  As a result, it makes sense to apportion primary responsibility for discovering such defects to the tenant.  Second, tenants who possess primary control over property will almost certainly be better situated to remedy an existing defect (or to call it to the attention of the landlord) and thus to prevent injury as a result of such a defect.  By the act of leasing property, a landlord " 'surrender[s] the premises to the tenant' " and thereby " 'loses all [or significant] control over them.' " *Sholberg*, 496 Mich at 10 (citations omitted).

In short, by signing a lease, a tenant accepts primary responsibility for the conditions of premises during the term of the lease because he or she is better positioned than the landlord to detect and remedy defects within the leasehold.  It would make little sense to hold the landlord responsible for an injury that he or she could not have reasonably discovered or prevented, especially when the tenant is better positioned in these regards.  Such a result seemingly would do little to forestall future injuries while increasing the financial burdens upon landlords and indirectly upon their tenants, while

also generating greater legal uncertainty and litigation. Because I believe that the instant result is unsupported by the reasonable application of the common law of this state, I would reverse the Court of Appeals judgment.

ZAHRA, J., joins the statement of MARKMAN, J.

CAVANAGH, J., did not participate due to her prior relationship with Garan Lucow Miller, P.C.



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

March 8, 2019



Clerk

a0305