*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SANDRA LIXEY,

　　　　　Plaintiff-Appellant,

v

L&M LEASING, INC.,

　　　　　Defendant-Appellee,

and

MI FLOAT, INC.,

　　　　　Defendant.

UNPUBLISHED
March 23, 2023

No. 361603
Midland Circuit Court
LC No. 20-007168-NO

Before: GLEICHER, C.J., and O'BRIEN and MALDONADO, JJ.

PER CURIAM.

In this premises liability action, plaintiff appeals as of right, challenging the trial court's grant of summary disposition in favor of defendant-appellee, L&M Leasing, Inc.[1] Concluding that the allegedly dangerously defective state of the premises was caused by an unfortunate confluence of mistakes that are solely attributable to L&M's lessee, defendant MI Float, Inc., we affirm.

## I. BACKGROUND

This case arises from injuries plaintiff sustained after she fell down the basement stairs of premises owned by L&M Leasing. Plaintiff was being treated by a healthcare professional who sublet a room from MI Float, which in turn leased a portion of a building owned by L&M Leasing. The building had a common area between the two tenants consisting of a hallway and a restroom. The restroom was accessed through a door in the hallway, and another door in the hallway led to

---

[1] The parties stipulated to dismiss defendant MI Float, Inc., with prejudice. MI Float is therefore not a party to this appeal.

the basement. Neither door was marked, although the healthcare professional had put up at least one handwritten sign on a wall with an arrow pointing toward the restroom. Plaintiff had previously used the restroom without trouble. On the day of the accident, however, the hallway was poorly lit, and plaintiff accidentally opened the door to the basement instead of the door to the restroom after she became turned around and was confused by the handwritten signage. The light in the restroom was usually off, so, upon opening the basement door, plaintiff tried to step inside to turn the light on. Although she flipped the switch, the light did not come on, and because there was no landing at the top of the stairs, she fell to the bottom of the steps, sustaining injuries.

The lease between L&M Leasing and MI Float provided that MI Float had "the non-exclusive right to use an adjoining restroom," but the leasehold excluded the basement. Nevertheless, the lease provided that MI Float could access the basement "during business hours upon reasonable notice to" L&M Leasing. Although nothing in the lease explicitly required the basement door to be kept locked, the evidence is that MI Float understood that L&M Leasing expected the door to be kept locked and did not want MI Float employees in the basement. The evidence shows, however, that while the door was indeed generally kept locked, MI Float employees had somewhat free access to the basement. The lease also generally required MI Float to maintain the premises. The principals of L&M Leasing only checked on the building occasionally. Ordinarily, the hallway was well-illuminated, but it is undisputed that on the day of the accident, the hallway was dimly lit.

One to three days before the accident, one of MI Float's employees had gone into the basement to turn on the switch powering the sump pump, which also turned on the light in the basement. That employee left the light (and the sump pump) on. Thereafter, another MI Float employee also went into the basement, but he broke the light and left the door unlocked. Thus, on the day of plaintiff's accident, the basement door was unlocked and there was no light in the basement.

Plaintiff commenced this premises liability action, contending, in relevant part, that although L&M Leasing admittedly could not have known about the door being unlocked, it nevertheless failed in its duties to keep the premises safe because of the lack of lighting, lack of a landing at the top of the basement stairs, and lack of proper signage for the restroom.

## II. STANDARD OF REVIEW

A grant or denial of summary disposition is reviewed de novo on the basis of the entire record to determine if the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). The trial court did not specify the subrule under which it granted summary disposition, but because it clearly considered evidence beyond the pleadings, it must be treated as having been brought and decided pursuant to MCR 2.116(C)(10). *Jawad A Shah MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 207; 920 NW2d 148 (2018). When reviewing a motion under MCR 2.116(C)(10), which tests the factual sufficiency of the complaint, this Court considers all evidence submitted by the parties in the light most favorable to the nonmoving party and grants summary disposition only where the evidence fails to establish a genuine issue regarding any material fact. *Maiden*, 461 Mich at 120.

## III. APPLICABLE PRINCIPLES OF LAW

We note initially that, while plaintiff asserts that she is alleging "claims of negligence and premises liability," her claim sounds solely in premises liability because she alleges only defective conditions in the building and claims that L&M Leasing's liability arises from its duty as an owner or possessor of the relevant portions of that building. See *Jahnke v Allen*, 308 Mich App 472, 474-476; 865 NW2d 49 (2014).

All possessors of land owe a duty to those who enter upon the land, but the extent of that duty depends on the status of the person on the land. *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 596; 614 NW2d 88 (2000). "With regard to invitees, a landowner owes a duty to use reasonable care to protect invitees from unreasonable risks of harm posed by dangerous conditions on the owner's land," *Hoffner v Lanctoe*, 492 Mich 450, 460; 821 NW2d 88 (2012) (footnote omitted), although the premises owner is not a guarantor of the invitee's safety, *Buhalis v Trinity Continuing Care Svcs*, 296 Mich App 685, 693; 822 NW2d 254 (2012).

Whether plaintiff could have been an invitee of L&M Leasing—who was leasing a portion of the building to MI Float—depends on whether L&M Leasing was in possession and control of the at-issue portion of the premises at the time of the accident. *Bailey v Schaaf*, 494 Mich 595, 604-609; 835 NW2d 413 (2013). Ownership of property is not dispositive; rather, liability depends on which party actually has possession and control of the property. *Sholberg v Truman*, 496 Mich 1, 6-17; 852 NW2d 89 (2014). A tenant of leased premises is presumptively the party with possession and control over the premises. *Id*. at 10-11, 14-15, 17; *Merritt v Nickelson*, 407 Mich 544, 552-553; 287 NW2d 178 (1980); *Bluemer v Saginaw Central Oil & Gas Svc, Inc*, 356 Mich 399, 405-406; 97 NW2d 90 (1959); *McCurtis v Detroit Hilton*, 68 Mich App 253, 256; 242 NW2d 541 (1976). However, the mere existence of a lease is also not dispositive, because a landlord who retains either exclusive or joint control over a common area remains liable for injuries caused by defects in the premises. *Bailey*, 494 Mich at 607-609; *Siegel v Detroit City Ice & Fuel*, 324 Mich 205, 214-215; 36 NW2d 719 (1949).

There are additional instances in which a lease does not necessarily insulate a landlord from liability. For instance, a landlord might be liable for injuries caused by a defect in the premises that existed at the time the lease was entered into. *Bluemer*, 356 Mich at 412-415. A landlord may also have "a duty to investigate and take available preventative measures" when advised by a tenant of a possible dangerous condition. *Samson v Saginaw Prof Bldg, Inc*, 393 Mich 393, 411; 224 NW2d 843 (1975). Further, a landlord who delegates a maintenance task to an independent contractor may be liable for inadequate or improper execution of that task. *Misiulis v Milbrand Maintenance Corp*, 52 Mich App 494, 501-508; 218 NW2d 68 (1974).

It remains true, however, that the fact a dangerous condition existed on the property does not establish liability—for either a landlord or tenant—unless there is some reason why the premises possessor should have discovered it. *Kroll v Katz*, 374 Mich 364, 373; 132 NW2d 27 (1965).

## IV. ANALYSIS

In the trial court, consistent with the terms of the lease, L&M Leasing admitted that everything on the basement side of the basement door was its responsibility. Although plaintiff contends that L&M Leasing created a number of unsafe conditions behind the door, ranging from a lack of a landing to failing to put the basement light on a circuit independent from the sump pump, none of those unsafe conditions are relevant. The lack of a landing would have been irrelevant if plaintiff had not been able to open the basement door or if the light bulb had not been broken. Likewise, the fact that the light bulb was broken would not be affected by the bulb's circuitry.

As to the unlocked basement door and the condition of the hallway leading to the door, plaintiff alleges that L&M Leasing retained at least shared control over the door itself and over the hallway illumination. The lease plainly gave L&M Leasing control over access to the basement, necessarily meaning the door. The lease never addressed the hallway, however—it granted MI Float the leasehold "which includes the non-exclusive right to use an adjoining restroom" and excluded the basement. Nevertheless, we will assume for purposes of this opinion that the hallway was a common area over which L&M Leasing retained at least some control.

Neither L&M Leasing's control over the door nor the hallway was exclusive—it at least shared control over the hallway with MI Float, and while the basement was excluded from MI Float's leasehold, L&M Leasing's control over the basement door was clearly not exclusive as evidenced by the fact that MI Float had some kind of right to access the basement pursuant to the lease and its employees had somewhat free access to do so. Accordingly, we agree with plaintiff that L&M Leasing retained some control over the basement door and the hallway. It follows that L&M Leasing retained at least some duties to maintain both. *Bailey*, 494 Mich at 607-609.

Even so, there is no evidence that L&M Leasing knew about or should have discovered the unlocked door or the dimly-lit condition of the hallway on the day of plaintiff's accident. Plaintiff admitted that L&M Leasing could not have known that the basement door had been left improperly unlocked. We agree, and we believe L&M Leasing could reasonably have expected that MI Float's employees would have kept the door locked. We further note that there is no basis for a conclusion that L&M had knowledge of the broken light bulb in the basement. The bulb had been broken shortly before the accident, and the evidence fails to show that any problem with the lighting was ever reported to L&M Leasing. *Samson*, 393 Mich at 411. Similarly, there is no evidence that L&M Leasing had knowledge about a defect in the hallway lighting. The evidence was that the hallway was ordinarily adequately illuminated, and there was otherwise no evidence about any underlying defect in the hallway, let alone a defect that had been reported to L&M Leasing. *Bluemer*, 356 Mich at 412-415. L&M Leasing cannot be held liable for conditions about which it had no reason to know. *Kroll*, 374 Mich at 373.

-4-

It is a closer question with respect to the signage for the restroom.[2] The lease gave MI Float a nonexclusive right to use the restroom, so it can be reasonably inferred that L&M Leasing retained some control over—and thus a duty to maintain—the restroom, necessarily including the restroom door. *Bailey*, 494 Mich at 607-609. There is no reason why L&M Leasing could not have put up proper signage on the restroom door identifying it as such. However, there is no evidence suggesting that finding the restroom was likely to end in misadventure in the absence of such signage when the hallway was properly lit or the basement door was locked. Instead, the evidence is that plaintiff became confused by the misleading handwritten sign, which was put up by MI Float's lessee, and by the darkness, of which L&M Leasing had no knowledge and only MI Float was in a realistic position to fix. In other words, the premises were made less safe because of the presence of allegedly improper signage, not because of the absence of proper signage. Plaintiff argues that a landlord may not delegate liability for improperly carrying out maintenance tasks, but that principle only applies where the landlord actually undertook the task or, perhaps, where it had an underlying obligation to undertake the task. *Misiulis*, 52 Mich App at 501-508. Neither circumstance is presence in this case. Accordingly, responsibility for the improper signage falls on MI Float because (1) there is no evidence that the premises were unsafe because of the absence of proper signage and (2) it was MI Float's lessee that put up the improper signage. *Id.*

Affirmed.

/s/ Colleen A. O'Brien
/s/ Allie Greenleaf Maldonado

---

[2] Plaintiff also argues that L&M Leasing could have put up signage identifying the basement door as the basement door, but as explained, L&M Leasing could reasonably have expected that MI Float's employees would have kept the door locked, and plaintiff admitted that L&M Leasing could not have known that the basement door had been left unlocked on the day of plaintiff's fall. Accordingly, L&M Leasing had no reason to know that the door to the basement would be unlocked, and there was otherwise no reason to "warn" an invitee that a locked door led to the basement.